UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BARRY RUSSELL TIMMONS,

Plaintiff,

v. Case No. 5:09-cv-161-Oc-18GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION**[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 9) and both parties have filed briefs outlining their respective positions. (Docs. 17 & 19.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On July 26, 2006, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of June 30, 2006. (R. 75-79.) Plaintiff's application was denied initially and upon reconsideration. (R. 45-48, 51-52.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

a hearing before an Administrative Law Judge ("ALJ"). (R. 4.) Plaintiff appeared and testified at a hearing held on April 8, 2008. (R. 18-42.) The ALJ issued a decision unfavorable to Plaintiff on October 22, 2008. (R. 6-17.) The Appeals Council denied Plaintiff's request for review. (R. 1-2.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was fifty-four (54) years old when the ALJ issued his decision. (R. 24, 345.) Plaintiff completed the eighth grade, obtained a GED and has worked as a warehouse material handler, tire mounter and bottling machine operator. (R. 23-27, 103-05, 116-17, 120, 161.) Plaintiff contends that he has been unable to work since June 30, 2006 due to arthritis, anemia, hypertension and diabetes. (R. 115.)

Beginning in 2002, Plaintiff was treated at Leesburg Community Health Center by Michael Kerkes, M.D., for a number of complaints, including hypertension, diabetes, anxiety, sore throat, cough. (R. 213-29.) On October 22, 2005, Plaintiff was seen for follow up of hypertension, diabetes, and hyperlipidemia. (R. 229.) Plaintiff reported that

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

he was not taking his diabetes medications as prescribed. He denied any dizziness, blurry vision, headaches, chest pain, shortness of breath, sores or neuropathy of his feet. It was noted that Plaintiff's diabetes and hyperlipidemia were in poor control but that his hypertension was in good control.

On May 6, 2006, Plaintiff's chief complaint was a cough and sore throat and although it was noted that Plaintiff had a history of osteoarthritis multiple sites generalized, Dr. Kerkes' notes do not show that Plaintiff reported any pain. (R. 227-28.) Dr. Kereks recorded that Plaintiff was "well developed" and "in no acute distress," his diabetes was "not uncontrolled" and his hypertension was "benign." (R. 227.) Plaintiff returned to Dr. Kerkes two weeks later to discuss sleep and lab results. (R. 224-26.) Plaintiff's diabetes was unchanged, and his blood pressure readings were in the target range. While Plaintiff reported joint pain, he denied generalized stiffness and he did not return to Dr. Kerkes for more than six months.

On August 22, 2006, Plaintiff was referred to Nagy Shanawany, M.D. for a consultative examination. (R. 193-96.) Plaintiff reported a history of arthritis, with pain in the spine, feet, hands and neck; anemia; hypertension; and diabetes mellitus, type II. Plaintiff complained of pain with lumbar and bilateral shoulder range of motion. Dr. Shanawany noted that Plaintiff had Heberden's and Burdock nodes on both of his hands. Her further noted that Plaintiff's gait was "mildly antalgic" and that he walked without assistance or an assistive device. No sensory or motor defects were noted. Dr. Shanawany's diagnostic impression was degenerative disc disease, anemia, hypertension, and diabetes mellitus, type II.

On November 28, 2006, Plaintiff returned to Dr. Kerkes. His hypertension was stable and his diabetes was still not uncontrolled. It was noted that he had moderate neuropathy to his right leg and while Plaintiff complained of joint pain and Dr. Kerkes noted joint tenderness, he found no deformity. (R. 222-23.) Plaintiff's gait was normal and his extremities had no edema or varicosities. Dr. Kerkes prescribed medication and there was no suggestion that he restricted Plaintiff's activities.

On February 16, 2007, Plaintiff's chief complaints were cough, sinus congestion and a stuffy nose. (R. 220.) He reported more arthritis in his hands and continued neuropathy in his feet, but it was noted that it did not effect his sleep or activities of daily living. (R. 220-21.) On August 21, 2007, Plaintiff returned for a bone density test and treatment for a cold. (R. 218-19.) Dr. Kerkes did not note that Plaintiff complained of pain at that appointment. On November 20, 2007, Plaintiff reported head congestion and pain in his hands and was treated for an upper respiratory infection. (R. 215-17.)

On February 13, 2008, Plaintiff complained of pain in his right knee. (R. 213-14.) Dr. Kerkes noted that Plaintiff's knee was tender on examination and a follow-up x-ray revealed only mild degenerative changes. Dr. Kerkes diagnosed Plaintiff with an unspecified disorder of the liver and a follow-up ultrasound showed his liver was slightly to moderately enlarged with fatty configuration, but without cystic or solid masses. (R. 213, 230-31.) However, there is no suggestion in the record that Plaintiff experienced any work-related limitations as a result of that condition.

There is one physical RFC assessment completed by non-examining state agency consultant, Minerva Hernandez, M.D. on November 21, 2006. (R. 205-212.)[23] Dr. Hernandez found that Plaintiff could frequently lift 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and/or pull without limitation; and only occasional stooping.

At the hearing, Plaintiff testified that he has arthritis and diabetes. (R. 28.) Plaintiff stated that his arthritis is “all over” his body, including his back, hands, ankles, feet and knees and that he is in constant pain – seven on a scale of one to ten. (R. 29.) Plaintiff reported numbness from his right knee up through his right hip. (R. 29.) Plaintiff testified that he has been using a cane for the past year-and-a-half to help balance him; and that he uses it daily “any time I get up and down.” (R. 30-31.) Plaintiff testified that he also has high blood pressure and anemia and that he tires out very easily. (R. 31.) Plaintiff reported spending most of his day in a recliner and often sleeps there because he has trouble sleeping in a regular bed. (R. 32-33.) Plaintiff testified that he cannot do any housework and that he shops once a week at Wal-Mart using an electric cart. (R. 33.) Plaintiff testified that he can lift ten pounds, stand an hour, walk 200 or 300 feet, sit for a couple of hours, and drive three or four miles at a time. (R. 34-36.)

Based on his review of the record, including Plaintiff’s testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had back pain, mild degeneration; bilateral foot pain, mild degeneration; and right knee pain, mild

[23] There is another physical RFC assessment of record that was completed by a Single Decision Maker, not a medical doctor. (R. 197-204.)

degeneration. (R. 11.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

The ALJ then found that Plaintiff retained the RFC to perform medium work as defined in 20 CFR 404.1567(c).[24] (R. 11-12.) He further found that plaintiff should avoid climbing ropes or scaffolds and prolonged exposure to cold temperature extremes along with extreme wetness or humidity. (Id.) The ALJ then concluded that Plaintiff could not perform his past relevant work, but that he could perform substantial gainful activity existing in significant numbers in the national economy, and thus, Plaintiff was not disabled. (R. 16-17.)

## IV. DISCUSSION

### A. The ALJ's RFC Finding Is Supported By Substantial Evidence

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform a reduced range of medium level work. However, a review of the medical evidence shows that the ALJ's RFC determination is supported by substantial record evidence.

Plaintiff has received conservative and sporadic treatments for his impairments and the treatments have been effective in controlling Plaintiff's symptoms. In fact, Plaintiff acknowledged in his memorandum that "there is very limited medical treatment

[24] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work.

in this claim." (Doc. 17 at 4.) This limited treatment history belies Plaintiff's allegations of disability.[25]

The treatment notes from Plaintiff's treating physician, Dr. Kerkes, support the ALJ's RFC finding. As Plaintiff acknowledges, Dr. Kerkes merely prescribed medications for each of Plaintiff's conditions. On May 6, 2006 – a month before Plaintiff's alleged disability onset – Dr. Kerkes noted that Plaintiff's chief complaint was a cough and sore throat. (R. 227-28.) While Dr. Kerkes noted Plaintiff's history of "osteoarthritis multiple sites generalized" there was no notation that Plaintiff complained of pain; instead, it was noted that Plaintiff was "well developed", "in no acute distress", his diabetes was "not uncontrolled" and his hypertension was "benign."

Two weeks later, Plaintiff returned to Dr. Kerkes to discuss sleep and lab results. (R. 224-26.) Plaintiff's diabetes was unchanged, and his blood pressure readings were in the target range. While Plaintiff reported joint pain, he denied generalized stiffness and he did not return to Dr. Kerkes for more than six months – November 28, 2006. On that date, his hypertension was stable and his diabetes was still not uncontrolled. Plaintiff had moderate neuropathy to his right leg and while Plaintiff complained of joint pain and Dr. Kerkes noted joint tenderness, no deformity was noted. (R. 222-23.) Plaintiff's gait was normal and his extremities had no edema or varicosities. Dr. Kerkes

---

[25] Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996); Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984); see also, Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995)(finding that "the ALJ was entitled to draw an inference from the general lack of medical care for back problems during the intervening years"); Stout v. Shalala, 988 F.2d 853, 855 (8thCir. 1993)("[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

prescribed medication and there was no suggestion that he restricted Plaintiff's activities.

When Plaintiff returned to Dr. Kerkes on February 16, 2007, his chief complaints were cough, sinus congestion and a stuffy nose. (R. 220-21.) He reported more arthritis in his hands and continued neuropathy in his feet, but it was noted that it did not effect his sleep or activities of daily living. Once again, Dr. Kerkes reported that Plaintiff's diabetes and hypertension remained stable and that Plaintiff was well developed and in no acute distress. On August 21, 2007, Plaintiff returned for a bone density test and treatment for a cold. (R. 218-19.) Dr. Kerkes did not note that Plaintiff complained of pain at that appointment. On November 20, 2007, Plaintiff reported head congestion and pain in his hands and was treated for an upper respiratory infection. (R. 215-17.)

On February 13, 2008, Plaintiff complained of pain in her right knee. (R. 213-14.) Dr. Kerkes noted that Plaintiff's knee was tender on examination and a follow-up x-ray revealed only mild degenerative changes. Dr. Kerkes diagnosed Plaintiff with an unspecified disorder of the liver and a follow-up ultrasound showed his liver was slightly to moderately enlarged with fatty configuration, but without cystic or solid masses. (R. 213, 230-31.) However, there is no suggestion in the record that Plaintiff experienced any work-related limitations as a result of that condition.

The ALJ's RFC finding is supported further by the findings of Dr. Shanawany, who performed a consultative examination on August 22, 2006. (R. 193-96.) Plaintiff reported a history of arthritis, with pain in the spine, feet, hands and neck; anemia; hypertension; and diabetes mellitus, type II. Plaintiff complained of pain with lumbar range of motion. He also complained of pain with bilateral shoulder ranges of motion,

however, there was no evidence of swelling or deformity and his motor strength was 5/5. Dr. Shanawany noted that Plaintiff had Heberden's and Burdock nodes[26] on both hands but his fingers and thumb did not have swelling, cyanosis or clubbing. Plaintiff's grip strength, fingertip sensory function and fine manipulation were normal. Dr. Shanawany further noted that Plaintiff's gait was "mildly antalgic" but he walked without assistance or an assistive device. No sensory or motor defects were noted. The tests Dr. Shanawany conducted of Plaintiff's knees were normal – with no swelling or effusion. Dr. Shanawany's diagnostic impression was degenerative disc disease, anemia, hypertension, and diabetes mellitus, type II.

Moreover, the ALJ had no obligation to defer to the state agency medical consultant, Dr. Hernandez, who completed the physical RFC assessment and opined that Plaintiff could lift ten pounds frequently. The ALJ considered the opinion of Dr. Hernandez, who never examined or treated Plaintiff, and noted that, "[w]hile these opinions were reasonable, based on the evidence available at the time, additional evidence received into the record at the hearing level convinces the undersigned that the claimant was less limited than originally thought." In support of this conclusion, the ALJ cited the lack of significant findings by Dr. Kerkes (who continued to treat Plaintiff for one year after Dr. Hernandez reviewed the records) and Dr. Shanawany. As discussed above, the opinions of both doctors support the ALJ's RFC determination.

---

[26] Heberden's and Bouchard's nodes are bony knobs on the finger joints and are a sign of osteoarthritis. *Early, Mild Osteoarthritis of the Hands*, http://www.medicinenet.com/script/main/art.asp?articlekey=20167 (last visited August 30, 2010.)

Plaintiff contends that the ALJ erred because no medical source found that Plaintiff could perform a reduced range of medium level work. However, while the ALJ is charged with assessing a claimant's RFC based on his evaluation of all of the relevant evidence, there is no requirement that the ALJ's RFC finding be based on a doctor's opinion.[27] Here, as discussed above, the ALJ properly considered the evidence of record and determined Plaintiff's RFC, in accordance with the regulations.[28]

**B. The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's complaints of pain. The Eleventh Circuit has established a three-part pain standard that applies whenever a claimant asserts disability through testimony of pain and other subjective symptoms. The standard requires a claimant to satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and either (2) objective medical evidence confirming the severity of the alleged pain; or (3) evidence that the determined medical condition is of a severity that can reasonably be expected to give rise to the degree of pain alleged.[29]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the

---

[27] 20 C.F.R. §§404.1513(b), 404.1527, 404.1545, 404.1546(c); Carol Harless v. Jo Anne B. Barnhart, Case No. 8:03-cv-1466-T-TGW, at 13-14 (M.D. Fla. March 3, 2004)(copy attached as Exhibit A to Doc. 19.)

[28] Plaintiff also argues that the ALJ committed a legal error by relying on the flawed testimony of the vocational expert. Because the Court concluded that the ALJ's RFC finding was supported by substantial evidence, and Plaintiff does not dispute that the ALJ's hypothetical to the VE accurately conveyed his RFC finding, the ALJ properly relied upon the VE's testimony.

[29] Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002.)

record must be obvious as to the credibility finding.[30] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[31] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[32] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[33] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[34] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[35]

Here, the ALJ properly considered Plaintiff's subjective complaints, including his testimony regarding numbness and substantial evidence supports his credibility finding. (R. 12-15.) In applying the pain standard, the ALJ found that Plaintiff's medically

---

[30] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[31] Foote at 1562-1563.

[32] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[33] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[34] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[35] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

determinable impairments "could reasonably be expected to produce some of Plaintiff's alleged symptoms." (R. 13.) The ALJ then concluded that Plaintiff's statements concerning the persistence, intensity and limiting effects of his symptoms are not fully credible to the extent they are inconsistent with the RFC assessment. (R. 13.)

As discussed above, the evidence as a whole did not substantiate a cause for the debilitating pain alleged. Indeed, Plaintiff received conservative and sporadic treatments for his impairments and the treatments have been effective in controlling Plaintiff's symptoms. Moreover, Plaintiff never required significant forms of treatment such as surgery, hospitalization or emergency room treatment.

Plaintiff contends that the ALJ improperly required Plaintiff to meet both the second and third prongs of the pain standard. However, this appears to be a distinction without significance. Indeed, while meeting the pain standard may entitle a plaintiff to a finding of disability, it does not mandate such a finding.[36] If the ALJ refuses to credit a claimant's subjective pain testimony, he must articulate explicit and adequate reasons for his refusal, as the ALJ did in this case.

Accordingly, there is substantial evidence to support the ALJ's decision to discredit Plaintiff's testimony regarding limitations.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk

[36] See Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987.)

should be directed to enter final judgment in favor of the Defendant consistent with this Order and to close the file.

**IN CHAMBERS** in Ocala, Florida, on September 8, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable G. Kendall Sharp
Senior United States Senior District Judge

Counsel of Record